# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| SUSAN A. SHANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:08-0940 |
| | ) | Judge Trauger |
| ADVANCE STORES COMPANY, INC. | ) | |
| d/b/a ADVANCE AUTO PARTS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court is the motion for summary judgment filed by the defendant (Docket No. 27), to which the plaintiff has responded (Docket No. 41). The defendant also has filed a motion for leave to file a reply brief and to exceed the page limitation (Docket No. 46). In addition, the defendant has filed a motion to strike certain medical records and related deposition testimony on which the plaintiff relies (Docket No. 48), to which the plaintiff has responded (Docket No. 50). For the reasons discussed herein, the defendant's motion to filed a reply brief and to exceed the page limitation will be granted, the defendant's motion to strike will be denied and the plaintiff will be granted leave to authenticate the medical records on which she relies, and the defendant's motion for summary judgment will be granted in part and denied in part.

## BACKGROUND

Susan A. Shannon, the plaintiff in this case, was employed by the defendant, Advance Stores Company, Inc., as a sales clerk at one of the defendant's retail locations from February 21, 2007 until she resigned on August 4, 2007.[1]

From 2000 to 2003, prior to her employment by the defendant, Ms. Shannon worked for the Dana Corporation. Her job there was physically taxing, and she suffered work-related injuries to her neck, shoulder, lower back, wrists, and feet. According to Ms. Shannon, she experienced "pain and tingling in both wrists," "pain and cramping in [her] hands," and a neck and back condition attributable to lifting heavy boxes, with symptoms including "pain, popping, muscle strains and cramps." She also states that she had leg and foot pain, that her legs and hands would swell and become painful, and that she experienced stinging, cramping, and numbness in her legs. In October 2003, Ms. Shannon left her employment at the Dana Corporation because her physical impairments rendered her unable to perform the duties required by her job there. After leaving the Dana Corporation, Ms. Shannon filed a claim for Social Security Disability Income and began receiving benefits.

According to Ms. Shannon, after she left her job at the Dana Corporation, her physical ailments improved to the point that she believed she would be able to perform a part-time job, so long as she was not required to stand for longer than four to five hours, lift heavy objects, or

---

[1]Unless noted otherwise, the facts are drawn from Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket No. 42) and the affidavits, depositions, and other exhibits that the parties have submitted in conjunction with briefing the defendant's pending motion for summary judgment.

perform repetitive actions with her hands.[2]  To this end, on February 10, 2007, Ms. Shannon

applied for a part-time position at one of the defendant's retail locations.  On her job application,

with respect to her availability, Ms. Shannon indicated "Sunday [prefer evenings] can work any

day."[3]  She did not indicate any other specific restrictions on the job application.  However,

according to Ms. Shannon, after she completed the application, she had a conversation with

Nancy Carney, the store manager, during which Ms. Shannon informed Ms. Carney that she was

receiving disability benefits as a result of her neck, back, arm, leg, and foot problems and that

she could not be on her feet for longer than four or five hours and could not do heavy lifting.

Ms. Shannon states that she also informed Ms. Carney that she was responsible for caring for her

granddaughter during the weekdays, and thus preferred to work evening shifts.  According to

Ms. Shannon, Ms. Carney did not request any documentation from Ms. Shannon's physician

regarding her medical condition and stated that Ms. Shannon's scheduling requests would not be

a problem and that Ms. Shannon could be scheduled for twenty hours per week.[4]

      Ms. Shannon began working for the defendant on February 21, 2007.  As the schedule for

the next two weeks was already established when she started working, Ms. Shannon was not on

the schedule for her first two weeks.  However, during her first week, Ms. Shannon was assigned

to fill in for other employees on four days and worked approximately twenty-eight hours.

During her second week, Ms. Shannon was assigned to fill in for other employees on six days

---

[2]Ms. Shannon also notes that, so long as she did not earn more than $839 per month, her Social Security Disability Benefits would not be affected if she took on part-time work.

[3]Ms. Shannon testified that this meant that she preferred being off on Sundays, but could work evenings on Sundays if necessary.

[4]The defendant has not disputed Ms. Shannon's testimony with respect to either the substance of this conversation or the fact that this conversation took place.

3

and worked approximately twenty-seven hours. After her first two weeks, Ms. Shannon was included on the regular schedule. Payroll records reflect that she was scheduled to work from four to twenty-six hours per week during the course of her employment. For the most part, each week, Ms. Shannon was scheduled to work one or more weekday shifts from 5:00 p.m. until 10:00 p.m. and a Sunday shift of varying length and time of day. The records further reflect that, in actuality, Ms. Shannon worked anywhere from nine to twenty-seven hours per week, often arranging with her co-workers to work shifts in addition to those for which she was scheduled.

Over the course of her first two weeks, while she was not on the regular schedule, Ms. Shannon was assigned to work on nine consecutive days. According to Ms. Shannon, as a new employee who "desperately" needed the job to survive financially, she felt obligated to work these hours, despite the fact that they conflicted with the restrictions she had articulated in her conversation with Ms. Carney. She further states that, as a result of working this schedule over her first two weeks, her feet and ankles began to swell and her back, neck, and arms began to ache. After working on nine consecutive days, Ms. Shannon informed a manager about the pain she was experiencing and he told her to take the following day off. According to Ms. Shannon, when she returned to work the subsequent day, she was "confronted" by Ms. Carney about changing her shift without Ms. Carney's approval. After Ms. Shannon reiterated her physical limitations, Ms. Carney called Ms. Shannon "lazy," stated that Ms. Shannon "just did not want to work," and said that she "would find someone that wanted to work."

As a result of Ms. Carney's conduct, in early March 2007, Ms. Shannon contacted the Disability Rights Section of the Department of Justice, which directed her to file a complaint with the Equal Employment Opportunity Commission ("EEOC"). Ms. Shannon also informed

two co-workers that she intended to file a complaint with the EEOC, and one of them told her not to do so. Although Ms. Shannon states that her intent was to file a complaint with the EEOC at this time, she decided not to do so because she feared that Ms. Carney would retaliate against her. Additionally, shortly after informing her co-workers of her intention to file a complaint with the EEOC, Ms. Shannon observed that Ms. Carney's behavior toward her worsened, to the point that Ms. Shannon believed that Ms. Carney "hated" her. Additionally, Ms. Shannon's co-worker told Ms. Shannon that Ms. Carney "hated" her.

In addition to her contact with the Department of Justice, Ms. Shannon made a number of calls to the defendant's "Team Member Hotline" to lodge a complaint, but she did not file a complaint after she was informed that the complaint process was very lengthy and that the process would not necessarily be confidential. Ms. Shannon also testified that she attempted to contact the defendant's Risk Management Department, but was directed to contact the hotline. In addition, although Ms. Shannon considered contacting District Manager Matt Green to lodge a complaint, she did not do so because she feared that Ms. Carney would retaliate against her. According to Ms. Shannon, Ms. Carney had stated that if anyone contacted Mr. Green, he would tell Ms. Carney. Ms. Shannon also testified that Ms. Carney stated that Mr. Green had instructed her to "fire anyone that complains" and that employees should "not even think of complaining" to Mr. Green. Further, Ms. Shannon states that she overheard Ms. Carney yelling at another employee for complaining to Mr. Green.

On June 8, 2007, Ms. Shannon provided Ms. Carney with a note from her doctor stating that, due to Ms. Shannon's condition, she could only work a maximum of twenty hours per

week, five hours per day, for a maximum of two consecutive days. Ms. Shannon states that Ms. Carney became "enraged" and once again accused her of being lazy and not wanting to work.

Ms. Shannon complains that, throughout her employment, Ms. Carney's behavior at work was "very abusive." Ms. Shannon testified that Ms. Carney called her names and berated her in front of other employees for being lazy and stupid and that Ms. Carney would instruct her to do one thing, and then yell at her to do something else. Ms. Carney also told Ms. Shannon on a nearly daily basis that she was lazy, did not want to work, and was stupid or ignorant. Ms. Shannon also alleges that Ms. Carney threatened to fire or reprimand her. Additionally, according to Ms. Shannon, Ms. Carney did not provide Ms. Shannon with training for certain tasks, and would then berate Ms. Shannon and call her lazy or stupid when Ms. Shannon made a mistake. On other occasions, Ms. Carney would direct Ms. Shannon to do one thing, and then interrupt her and demand that she do something different. Ms. Shannon further testified that, on one occasion, Ms. Carney required Ms. Shannon to clean the store's parking lot in the rain and refused to let Ms. Shannon wait until it stopped raining. Ms. Shannon testified that Ms. Carney and a young male employee watched and laughed while Ms. Shannon cleaned the parking lot, and that she was then required to work the remainder of her shift in wet clothing.

Ms. Shannon also testified that Ms. Carney did not treat other employees in the same abusive manner that she treated Ms. Shannon. Ms. Shannon states that Ms. Carney treated young male employees, in particular, better than she treated Ms. Shannon, and that young male employees were permitted to take breaks, engage in horseplay, and wear non-standard uniforms, whereas Ms. Shannon was not. Ms. Shannon further alleges that Ms. Carney made her perform certain tasks, such as straightening the shelves, sweeping the floor, and cleaning the parking lot,

6

but did not require this of young male employees, and that Ms. Carney provided young male employees with training, whereas Ms. Shannon received no training. Additionally, according to Ms. Shannon, Ms. Carney honored scheduling requests made by young male employees, while denying Ms. Shannon's scheduling requests. Ms. Shannon also complains that Ms. Carney regularly scheduled her for fifteen hours or less, while scheduling young male employees for more hours, and would not permit Ms. Shannon to pick up shifts from her co-workers, saying that she would "find someone that wanted to work" to have those shifts.

On August 4, 2007, Ms. Shannon resigned from her job with the defendant and began working for one of the defendant's competitors. Subsequently, she filed a charge of discrimination with the EEOC.

## ANALYSIS

Ms. Shannon alleges that the defendants' conduct constitutes discrimination on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, discrimination on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and discrimination on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[5] Additionally, she alleges that she suffered a hostile work environment and retaliation in violation of these statutes. Before the court turns to an analysis of Ms. Shannon's claims, however, it must address the issues raised by the defendant in its motion to strike certain of the evidence on which Ms. Shannon relies.

---

[5]In her Complaint, Ms. Shannon also alleged discrimination on the basis of religion (Docket No. 1 ¶ 27), but she has not opposed the defendant's motion for summary judgment with respect to this claim (Docket No. 43 at 2 n.1), and the defendant has demonstrated that there is no genuine issue of material fact to this claim. Thus, summary judgment will be granted for the defendant with respect to Ms. Shannon's religious discrimination claim.

7

## I.  Motion to Strike

In support of her claims, Ms. Shannon not only has testified about her health condition but also has relied on the records of her physicians to establish her diagnoses and medical restrictions.  (Docket Nos. 43-2 and 43-3.)  The defendant has moved to strike those records as well as Ms. Shannon's testimony regarding her diagnoses, arguing that this evidence constitutes inadmissible hearsay and an inadmissible lay opinion.  (Docket No. 49.)

On a motion for summary judgment, the party bringing the motion "has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts."  *Alexander v. Caresource*, No. 08-3880, 2009 U.S. App. LEXIS 18209, at *9-10 (6th Cir. 2009) (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  Then, the party opposing the motion "must make an affirmative showing with proper evidence in order to defeat the motion."  *Id.* at *10 (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)); *see also* Fed. R. Civ. P. 56(e).  As a summary judgment opponent must demonstrate that she can produce evidence that will be admissible at trial to establish a genuine issue of material fact, hearsay evidence must be disregarded.  *Alexander*, 2009 U.S. App. LEXIS 18209, at *11-12 (citing *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)).

Ms. Shannon relies on medical records in support of certain of her claims.  As these records are out-of-court statements introduced for the truth of the matter asserted, they constitute hearsay and thus are inadmissible, unless one of the exceptions to the hearsay rule applies.  Fed. R. Evid. 801(c), 802.  Although the records might fall under the business records exception to

the hearsay rule, to establish that this exception applies, the records must have been made by a person with knowledge and kept in the course of a regularly conducted business activity where it was the regular practice of that business to make that record. Fed. R. Evid. 803(6). Moreover, all of this must be "shown by the testimony of the custodian or other qualified witness" or certified by that individual. *Id.*; Fed. R. Evid. 902(11). Here, Ms. Shannon introduced the medical records at issue as an exhibit to her own affidavit and has not provided an affidavit or other evidence that would authenticate the medical records and establish that they fall under the business records exception to the hearsay rule.

In response to the defendant's motion, however, Ms. Shannon requests leave to submit an affidavit authenticating the medical records as required by Rules 803(6) and 902(11). She argues that leave should be granted because it was the defendant who introduced the records at Ms. Shannon's deposition and the defendant did not raise any objection to the authenticity of the records at that time. In light of these facts, there does not appear to be a genuine dispute as to the authenticity of the medical records. Therefore, the defendant's motion to strike will be denied, although Ms. Shannon will be required to authenticate the records in compliance with Rules 803(6) and 902(11) as soon as is reasonably possible.

## II.     Motion for Summary Judgment

Having resolved the defendant's motion to strike, the court next addresses the merits of the defendant's motion for summary judgment with respect to Ms. Shannon's claims.

### A.     *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

9

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative,"

10

or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

      B.      *Discrimination on the Basis of Disability*

Ms. Shannon alleges that she was discriminated against on the basis of disability in violation of the Americans with Disabilities Act ("ADA"). ADA claims are evaluated according to the burden-shifting structure set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802-04 (1973); *Plant v. Morton Intern, Inc.*, 212 F.3d 929, 936 (6th Cir. 2000) (applying *McDonnell Douglas* in ADA case). Under *McDonnell Douglas*, a court must first determine whether a plaintiff has established a *prima facie* case of discrimination. 411 U.S. at 802. If the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Id*. If the defendant succeeds, the burden shifts back to the plaintiff to demonstrate that the reason offered by the defendant for its actions was not its true motivation, but, rather, was a pretext for discrimination. *Id*.

To establish a *prima facie* case of discrimination under the ADA, Ms. Shannon must demonstrate that (1) she is an individual with a disability; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she was discriminated against as a result of that disability. *See Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001); *Walsh v. United Parcel Serv.*, 201 F.3d 718, 724 (6th Cir. 2000); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996).

11

The defendant first argues that Ms. Shannon has not established that a genuine issue of material fact exists as to whether she is an individual with a disability under the terms of the ADA. Under the ADA, a disability is defined as (1) "a physical or mental impairment that substantially limits one or more of the major life activities"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 459-60 (1999). According to the ADA's implementing regulations, "major life activities" include, but are not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). To determine whether the degree of limitation experienced by the plaintiff is substantial, "courts should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact, of the impairment." *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997) (citing 29 C.F.R. § 1630.2(j)(2)).

Ms. Shannon asserts that she is substantially limited in her ability to work. To establish such a limitation, a plaintiff must demonstrate that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(ii)(B); *see also Sutton*, 527 U.S. at 491 (stating that, "at the minimum," a plaintiff must show that she was "unable to work in a broad class of jobs"). It is insufficient if the plaintiff merely is limited in her ability to work in "one type of job, a specialized job, or a particular job of choice." *Sutton*, 527 U.S. at 492. Determining whether a plaintiff is substantially limited in her ability to work requires consideration of "[t]he job from which the

12

individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(B); *see also Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 254 (6th Cir. 2000).

Ms. Shannon testified that she suffers from "severe neck, back, arm, leg and feet problems," is unable to walk or stand for periods of longer than four to five hours, is unable to work more than two consecutive days, and is unable to lift heavy objects. Ms. Shannon has been diagnosed with degenerative disc disease in her neck and back, resulting in a 5% disability to her cervical spine and a 5% disability to her lumbar spine. She also has been diagnosed with a right shoulder strain and bilateral carpal tunnel syndrome, resulting in a 5% disability to each arm, and with bilateral plantar fasciitis. On June 7, 2007, while she was employed by the defendant, her physician prescribed her medical restrictions limiting her to no more than twenty hours of work per week, for five hours per day, and no more than two consecutive days.

Ms. Shannon argues that her impairments effectively restrict her from working any full-time jobs. However, Ms. Shannon has not pointed to any authority to support the proposition that "full-time jobs" constitutes either a broad class of jobs or a broad range of jobs in various classes. To the extent that Ms. Shannon can only be on her feet for a limited number of hours each day and a limited number of consecutive days, that her impairment appears to be permanent and, indeed, may be exacerbated by working longer hours, and that her doctor has placed restrictions on her work, it certainly seems as though Ms. Shannon is significantly restricted in her ability to work in many jobs. However, Ms. Shannon has provided no particular evidence of

13

the number and types of jobs within the relevant geographical area from which she is disqualified as a result of her impairments. Moreover, the facts that Ms. Shannon has worked in retail sales both for the defendant and for her current employer and that she has, on occasion, worked more than five hours per day or more than two consecutive days counters her argument that she is substantially limited in her ability to work.

However, even assuming that Ms. Shannon has established a genuine issue of fact with respect to whether she is disabled under the ADA, her claim nevertheless fails, as she has not established that she suffered an adverse employment action. To establish the third element of a *prima facie* case of disability discrimination, Ms. Shannon must demonstrate that she was discriminated against, which is to say, that she suffered an adverse employment action. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (noting that a plaintiff must have suffered an adverse employment action to satisfy the third element of a *prima facie* case of discrimination under the ADA. An adverse employment action may consist of "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibility, or other indices that might be unique to a particular situation." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 558 (6th Cir. 2002) (citing *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999)).

Ms. Shannon asserts that she suffered an adverse employment action to the extent that her hours were reduced, resulting in a reduction of her pay and, ultimately, her constructive discharge. She asserts that she repeatedly informed Ms. Carney that, financially, she needed to be scheduled for additional hours, but that Ms. Carney refused to honor this request. To establish that she was constructively discharged, Ms. Shannon must establish that her "working

conditions [were] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Talley*, 542 F.3d at 1107 (citing *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). "The existence of a constructive discharge 'depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.'" *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004) (citing *Held*, 684 F.2d at 432).

However, the evidence does not bear out Ms. Shannon's claim that her hours were reduced as a factual matter, nor that the hours for which she was scheduled resulted in her constructive discharge. During the course of her employment, Ms. Shannon was scheduled to work anywhere from four hours to twenty-six hours per week. However, on most weeks, she was scheduled to work anywhere from fifteen to twenty hours, and it was only during a handful of weeks that she was scheduled to work for fewer than fifteen hours or more than twenty hours. Overall, and even excluding the first two weeks, when she was not on the official schedule but worked well over twenty hours per week, Ms. Shannon was scheduled to work an average of approximately fifteen hours per week. Moreover, because she was able to pick up additional shifts from her co-workers, Ms. Shannon actually worked nearly eighteen hours per week during her employment.[6]

Essentially, Ms. Shannon's argument is that she was entitled to work twenty hours per week and being scheduled for any less than that constituted an adverse employment action.

_____

[6]Although Ms. Shannon testified that Ms. Carney criticized her for picking up other employees' shifts or refused to allow her to do so, the payroll records do not reflect this at all. Instead, the records reflect that Ms. Shannon worked shifts other than those for which she was scheduled on multiple occasions during the course of her employment.

However, there is no indication that her part-time position guaranteed her twenty hours per week. According to Ms. Shannon, when she was hired, Ms. Carney said that she could schedule Ms. Shannon for twenty hours per week given Ms. Shannon's medical restrictions, but this statement hardly constituted a guarantee that Ms. Shannon would be scheduled for no fewer than twenty hours each week, especially in light of the fluctuating nature of retail, the scheduling requirements of other employees, and the complications introduced by Ms. Shannon's own medical conditions. Moreover, there is a certain illogic to Ms. Shannon's argument. On the one hand, she complained about being scheduled for too many hours, arguing that this violated her medical restrictions and that her disability rendered her unable to work more than twenty hours per week, and she requested that her hours be reduced when she was scheduled to work more than twenty hours per week. On the other hand, she complained about being scheduled for too few hours, arguing that being scheduled for an average of fifteen hours per week rather than twenty constituted an adverse employment action. Likewise, although Ms. Shannon argues that young male part-time employees were scheduled for more hours than she, averaging over twenty hours per week, she ignores the fact that her medical conditions prevented her from working the hours that these employees worked.

Thus, there does not exist a question of fact as to whether Ms. Shannon suffered an adverse employment action by virtue of the fact that she was scheduled for an average of fifteen hours per week during the course of her employment with the defendant, nor that this scheduling led to Ms. Shannon's constructive discharge, as a reasonable person in Ms. Shannon's shoes would not have been compelled to resign on the basis of being scheduled to work an average of fifteen hours per week, especially in light of the fact that Ms. Shannon was actually able to work

an average of eighteen hours per week and, in any case, could only work a maximum of twenty hours per week by virtue of her medical restrictions. As Ms. Shannon has failed to establish an adverse employment action with respect to her claim of discrimination on the basis of disability in violation of the ADA, the defendant is entitled to summary judgment with respect to this claim.

      C.     *Discrimination on the Basis of Gender or Age*

In addition to her claim of disability discrimination, Ms. Shannon alleges that she was discriminated against on the basis of gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"). Both of these claims are analyzed under the same burden-shifting framework that applied to Ms. Shannon's claim of disability discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (applying *McDonnell Douglas* in ADEA case); *Johnston v. O'Neill*, 130 Fed. Appx. 1, 7 (6th Cir. 2005) (same).

The elements required to establish a *prima facie* case of gender or age discrimination are essentially the same. To establish a discrimination claim under Title VII, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was treated differently than similarly-situated non-protected employees. *McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006) (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)). Likewise, to establish a discrimination claim under the ADEA, a plaintiff must demonstrate that (1) she was at least forty

17

years old at the time of the alleged discrimination; (2) she was subject to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a substantially younger applicant. *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001) (citing *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998)).

A lengthy consideration of Ms. Shannon's gender and age claims is not necessary. The basis for Ms. Shannon's allegation that she suffered an adverse employment action on account of her gender and age mirrors her claim that she suffered an adverse employment action on account of her disability. (Docket No. 43 at 43-44.) As this court already has concluded that Ms. Shannon has failed to establish a genuine issue of fact with respect to that element of her disability discrimination claim, her gender and age discrimination claims likewise fail for the same reason, and the court need not address the other elements of her claims.

D.      *Hostile Work Environment*

Ms. Shannon also claims that she was subject to a hostile work environment on account of her disability, gender, and age. To establish a hostile work environment claim, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on her membership in the protected class; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009); *Coulson v. Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 858 (6th Cir. 2002); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996).

To establish that a hostile work environment existed, a plaintiff must demonstrate that her workplace was "permeated with discriminatory intimidation, ridicule, and insult[] that is

18

sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (citation and quotation omitted). This standard is both subjective and objective, in that a plaintiff must show not only that she subjectively perceived the environment to be hostile or abusive, but also that the conduct was so severe or pervasive that a reasonable person objectively would consider it as such. *Id.* at 21-22. Courts determining whether a hostile work environment exists must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 23).

The defendant argues that Ms. Shannon has not demonstrated that the harassment she alleges to have suffered was sufficiently severe or pervasive to constitute a hostile work environment. However, Ms. Shannon alleges that, over the course of the six months during which she was employed by the defendant, Ms. Carney regularly called her lazy, stupid, and ignorant. Ms. Shannon also alleges that Ms. Carney gave her conflicting directions, and then berated Ms. Shannon for not doing what she had asked. Further, Ms. Shannon claims that Ms. Carney failed to train her properly, and then criticized Ms. Shannon for making the mistakes that inevitably resulted from this lack of training. Ms. Shannon also testified that, on one occasion, Ms. Carney forced Ms. Shannon to clean the parking lot in the rain, while Ms. Carney and a young male employee watched and laughed, and then required Ms. Shannon to work the remainder of her shift in wet clothes.

19

The defendant claims that Ms. Shannon's allegations amount to little more than "petty slights" for which it cannot be held liable. While the anti-discrimination statutes are not intended as a "general civility code," Ms. Carney's conduct was not merely the "sporadic use of abusive language" or "occasional teasing," in which case it would be non-actionable. *Faragher*, 524 U.S. at 788; *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005); *see also Coulson*, 31 F. App'x at 858 (holding that name-calling alone is not sufficient to create a hostile work environment). Instead, Ms. Shannon suffered continuous verbal abuse that clearly interfered with her ability to do her job, not only to the extent that it obviously was troublesome to her, but also to the extent that she often literally could not do that which Ms. Carney asked, when, for example, Ms. Carney interrupted Ms. Shannon, gave Ms. Shannon conflicting directions, or demanded that Ms. Shannon be in two places at once. In addition, the harassment was physically humiliating on at least one occasion, when Ms. Shannon was required to clean the parking lot in the rain and then finish working her shift in wet clothing. Ms. Carney's conduct was such that, not only did Ms. Shannon perceive her environment to be abusive, but a reasonable person would have perceived it so as well. Although it is a close question, the court concludes that these facts establish, at the very least, pervasive harassment that altered the conditions of Ms. Shannon's environment, and, thus, Ms. Shannon has adduced sufficient evidence to create a genuine issue of fact as to whether the harassment that she suffered created a hostile work environment.          The defendant also argues that there is no evidence that any of the alleged harassment was directed at Ms. Shannon on account of her protected status, and notes that Ms. Carney was likely motivated by frustration borne of her efforts to improve the store's performance. Moreover, the defendant notes that, even if Ms. Carney's conduct was

20

motivated not by frustration but, rather, out of a personal dislike for Ms. Shannon, harassment motivated by dislike does not establish discriminatory harassment. *See Trepka v. Board of Educ.*, 28 F. App'x 455, 462 (6th Cir. 2002) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)). However, Ms. Shannon testified that Ms. Carney's insults worsened after Ms. Shannon attempted to discuss her medical condition and restrictions with Ms. Carney. Moreover, Ms. Shannon testified that non-protected employees were not subject to the same abusive treatment by Ms. Carney. Given this testimony, a reasonable juror could infer that the harassment that Ms. Shannon experienced was on account of her disability rather than merely out of Ms. Carney's frustration or dislike of Ms. Shannon.[7]

The defendant relies on the same-actor inference in support of its argument that Ms. Carney's actions did not create a hostile work environment. The same-actor inference permits a court to infer a lack of discrimination where the same individual both hired and fired the plaintiff. *Burhmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463, 464 (6th Cir. 1995). However, the same-actor inference typically applies to claims of discrimination, rather than to hostile work environment claims. Moreover, even if the same-actor inference applied in the context of a hostile work claim, it is insufficient to warrant summary judgment, where the plaintiff has otherwise established a genuine issue of material fact as to her claim, as is the case here. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 573-74 (6th Cir. 2003).

---

[7]Although Ms. Shannon claims that she experienced a hostile work environment on the basis of her disability, gender, and age, the evidence she has adduced establishes a claim of harassment based on disability rather than one based on gender or age. In any event, however, the court may consider incidents of harassment based on gender or age as contributing to the overall environment in which Ms. Shannon worked. *See Hafford v. Seidner*, 183 F.3d 506, 514-15 (6th Cir. 1999).

The defendant next argues that it cannot be liable for the harassment that Ms. Shannon alleges she suffered, noting that it had in place an anti-harassment policy that provided specific procedures for employees to report harassment. However, where the harasser was the plaintiff's immediate supervisor, as is the case here, the employer is vicariously liable for a hostile work environment created by the conduct of that supervisor. *Faragher*, 524 U.S. at 807.

The defendant further relies on the existence of its anti-harassment policy to establish an affirmative defense to Ms. Shannon's hostile work environment claims. However, to establish that it is entitled to the affirmative defense, the defendant's actions must not have culminated in a tangible employment action, in which case the defense is not available and the defendant is strictly liable. *Id.* at 777; *Crawford v. Metro. Gov't of Nashville & Davidson County*, 129 S. Ct. 846, 852 (2009). A tangible employment action consists of "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Moreover, a constructive discharge constitutes a tangible employment action and, thus, when a supervisor's conduct results in an employee's constructive discharge, the employer may not rely on the affirmative defense. *Pa. State Police v. Suders*, 542 U.S. 129, 140-41 (2004).

Here, Ms. Shannon has adduced sufficient evidence to withstand summary judgment with respect to the question of whether the harassment she suffered resulted in her constructive discharge.[8] Given the harassment that Ms. Shannon experienced throughout the course of her

---

[8]Although the court reached the opposite conclusion with respect to the question of constructive discharge in the context of Ms. Shannon's disability discrimination claim, as discussed *supra*, it should be noted that the issue of whether Ms. Shannon was constructively

employment, there exists a genuine issue of fact as to whether Ms. Shannon's working conditions were so difficult or unpleasant that she felt compelled to resign, and whether the defendant reasonably could have foreseen that Ms. Shannon would resign as a result of the harassment. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008). As a constructive discharge constitutes a tangible employment action, the defendant is not entitled to the affirmative defense with respect to Ms. Shannon's hostile work environment claims, and the defendant's motion for summary judgment with respect to those claims will be denied.

E.      *Retaliation*

Finally, Ms. Shannon alleges that she suffered retaliation. Like her discrimination claims, Ms. Shannon's retaliation claims are analyzed under the *McDonnell Douglas* framework. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) she engaged in activity protected by the relevant anti-discrimination statutes; (2) the exercise of her protected rights was known to the defendant; (3) she was subject to an adverse employment action or severe or pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (Title VII); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (ADEA); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 814 (6th Cir. 1999) (ADA).

_____

discharged in the context of her discrimination claims differs as compared to the issue of whether she was constructively discharged in the context of her hostile work environment claims. In the former, the issue was whether the hours for which she was scheduled resulted in her constructive discharge; in the latter, the issue is whether the harassment she experienced resulted in her constructive discharge.

The defendant argues that Ms. Shannon has not demonstrated that she engaged in any protected activity and that, even if she did, it was unaware of her exercise of protected rights. The anti-discrimination statutes at issue here protect a plaintiff from retaliation that is brought on either by the plaintiff's opposition to her employer's unlawful employment practice or by the plaintiff's participation in an investigation, proceeding, or hearing regarding an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a) (Title VII); 42 U.S.C. § 12203(a) (ADA); 29 U.S.C. § 623(d) (ADEA). To oppose an unlawful employment practice, a plaintiff need not engage in active, consistent opposition. *Crawford v. Metro. Gov't of Nashville & Davidson County*, 129 S. Ct. 846, 851 (2009). Thus, a plaintiff may oppose discrimination "not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Id.* Additionally, an employee may engage in protected activity by making a complaint to anyone about alleged discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000) (noting that a complaint made "to a co-worker, newspaper reporter, or anyone else about alleged discrimination" constitutes a protected activity).

Here, Ms. Shannon asserts that her communication with the Department of Justice, the intent she formed to file a charge with the EEOC early in the course of her employment, and complaints that she made to Ms. Carney and that she attempted to make to the defendant's hotline and Risk Management Department all constitute protected activity. At the very least, Ms. Shannon's communication with the Department of Justice constituted a protected activity. Moreover, an intent to file a charge of discrimination may constitute a protected activity if the intent is "definite," as opposed to "inchoate and unarticulated." *See Croushorn v. Bd. of*

24

*Trustees*, 518 F. Supp. 9, 22 (M.D. Tenn. 1980). Although Ms. Shannon's intent was not as clear as was the plaintiff's in *Croushorn*, to the extent that she did not inform the defendant of her intent and did not actually file a charge shortly after forming the intent to do so, the fact that she contacted the Department of Justice and made several contacts to the defendant's hotline and the Risk Management Department all reflect that her intent was not merely inchoate but was definite.

The question that remains is whether the defendant was aware of Ms. Shannon's protected activity. As noted above, there is no evidence that Ms. Shannon informed Ms. Carney or any other supervisor of her communications with the Department of Justice or her intent to file a complaint with the EEOC. However, Ms. Shannon did inform two co-workers of her intent to file a complaint. In response, one of those co-workers counseled Ms. Shannon against doing so. Further, Ms. Shannon has testified that, after having this conversation with her co-workers, Ms. Carney's behavior toward her grew more abusive, to the point that it seemed to Ms. Shannon that Ms. Carney "hated" her. Moreover, Ms. Shannon testified that, during a meeting, Ms. Carney commented that no one should "even think" about complaining to a more senior manager, and Ms. Shannon overheard Ms. Carney criticizing another employee who complained. Further, Ms. Carney was certainly aware of certain of Ms. Shannon's complaints, to the extent that Ms. Shannon complained directly to Ms. Carney about the hours for which she was scheduled. Given these facts, it would be reasonable to infer that Ms. Carney was aware of Ms. Shannon's communication with the Department of Justice or her intent to file a complaint with the EEOC. Moreover, this evidence establishes that a fact issue exists as to whether the

25

harassment that Ms. Shannon experienced was causally connected to Ms. Shannon's protected activity.[9]

Finally, with respect to the question of whether Ms. Shannon experienced an adverse employment action, the Sixth Circuit has held that severe or pervasive retaliatory harassment satisfies this element of a *prima facie* case of retaliation. *Morris*, 201 F.3d at 792. This court has already concluded that Ms. Shannon experienced, at the very least, pervasive harassment. Moreover, this harassment was sufficient to dissuade a reasonable person from filing a complaint of discrimination, *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and did, indeed, dissuade Ms. Shannon from doing so. As such, Ms. Shannon has established each of the elements of a *prima facie* case of retaliation.

Finally, the defendant argues that it had a legitimate non-discriminatory reason for its actions and that Ms. Shannon cannot establish that this reason is pretextual. In making this argument, the defendant asserts that Ms. Shannon was scheduled to work for certain hours on account of external factors such as other employees' availability and the needs of the store. This reason, however, would explain only the reduction in Ms. Shannon's hours. It would not account for the retaliatory harassment that Ms. Shannon alleged she experienced at Ms. Carney's

---

[9]Ms. Shannon alleges not only that she suffered retaliatory harassment, but also that she suffered an adverse employment action to the extent that her hours were reduced, much like the argument that she makes in conjunction with her discrimination claim, discussed *supra*. However, the evidence does not bear out this claim. In the five weeks following her communication with the Department of Justice, Ms. Shannon was scheduled to work twenty hours, fifteen hours, fifteen hours, eighteen and one-half hours, and seventeen hours. In the following four weeks there was a drop-off, and Ms. Shannon was scheduled for anywhere from four to eleven hours per week. However, Ms. Shannon had requested time off during one of those weeks, and, during the subsequent thirteen weeks during which she worked for the defendant, Ms. Shannon was scheduled for anywhere from ten to twenty-six hours.

26

hands, and thus the defendant has not carried its burden under the second step of the *McDonnell Douglas* framework.

## CONCLUSION

For the reasons discussed herein, the defendant's motion for summary judgment will be granted with respect to Ms. Shannon's claims of discrimination on the basis of disability, age, gender, and religion, and denied with respect to Ms. Shannon's claims of a hostile work environment and retaliation. Additionally, the defendant's motion for leave to file a reply brief and to exceed the page limitation will be granted, and the defendant's motion to strike certain medical records and related deposition testimony will be denied and the plaintiff granted leave to authenticate the medical records on which she relies, in conformity with Fed. R. Evid. 803(6) and 902(11), as soon as is reasonably possible.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge